IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| IN RE: | CASE NO. 20-50775 |
|---|---|
| WISCONSIN APPLE LLC | |
| DEBTOR[1] | CHAPTER 11 |
| | JUDGE JOHN W. KOLWE |

**DECLARATION IN SUPPORT OF MOTIONS FOR ORDER AUTHORIZING USE OF CASH COLLATERAL AND FOR AUTHORITY TO PAY EMPLOYEES' PRE-PETITION WAGES**

This Declaration ("Declaration") is submitted on behalf of Wisconsin Apple LLC in support of its *Emergency Motion for Entry of Order Pursuant to Sections 361 and 363 of the Bankruptcy Code and Bankruptcy Rule 4001 for Interim and Final Orders: (1) Authorizing Use of Cash Collateral; (2) Granting Adequate Protection; (3) Scheduling and Approving the Form and Method of Notice for a Final Order; and (4) For Related Relief* ("Cash Collateral Motion") (Dkt. #7) and its *Emergency Motion for Authority to Pay Employees' Pre-Petition Wages, Related Expenses, Benefits, and Taxes* ("Wage Motion") (Dkt. #8). The Declaration will also be used in part to support additional requests for relief in this case which have yet to be filed.

1) I am the managing member of Wisconsin Apple LLC ("Wisconsin Apple" or "Debtor");

2) Wisconsin Apple is a Louisiana LLC located in Lafayette, Louisiana, which is the owner, franchisee and operator of twenty-five (25) Applebee's stores located in the State of Wisconsin. The Applebee's brand is within what is known in the industry as "casual dining"

---

[1] 3909 Ambassador Caffery Parkway, Lafayette, LA 70503. EIN xx-xx3622.

{00374366-9}  1

and offers little or no drive through or pick-up service. This is different from other franchise operations such as Taco Bell and Popeye's that are known as quick serve restaurants ("QSR") which, although they offer dine-in service, are equipped to quickly pivot to pick-up service through drive-in windows;

3) The Wisconsin Apple restaurants were acquired in November, 2019 after having been on the market for over 2 years;

4) Bremer Bank ("Bremer") financed the acquisition of the Wisconsin Apple restaurants and it possesses a security interest in certain assets of the Debtor. The documents executed by me on behalf of the Debtor purport to grant Bremer a lien on all assets of the Debtor, however, as stated in a pleading that Wisconsin Apple has filed in this case, the assets upon which Bremer asserts a security interest are limited in scope;

5) The prior operator of the Wisconsin Apple restaurants consistently received low service grades by Applebee's in connection with its operation of the restaurants. Under current ownership and management, between November, 2019 and March, 2020, the operational grades increased into the upper range of Applebee's franchise operations;

6) In addition, between November, 2019 and March, 2020, we were able to increase the sales generated at the restaurants such that the losses I experienced were being eroded;

7) Then covid-19 hit the United States;

8) Initially the Governor of Wisconsin ordered a complete lockdown of all casual dining and other businesses. In May, 2020, the Wisconsin Supreme Court reversed the order and allowed restaurants to reopen;

9) When the lockdown was ordered, Wisconsin Apple shut down its operations in total;

10) After the Wisconsin Supreme Court ruling, Wisconsin Apple began the task of reopening its restaurants. The job of reopening required the hiring of new employees and staffing all the restaurants;

11) Wisconsin Apple was current in its payments to Bremer up until the March lockdown;

12) The costs of reopening the restaurants was in part funded by the Federal Government through various loan programs;

13) At present, Wisconsin Apple has been able to open twenty-five (25) restaurants;

14) The levels of revenue from the operation of the twenty-five (25) restaurants are about thirty percent (30%) of the revenue received in the November through March period. The revenue numbers also take into account the summer months when the covid-19 spread in Wisconsin was on the decline;

15) Since May, when Wisconsin Apple first began the task of reopening the restaurants, we have faced a periodic shut down of restaurants due to employees testing positive for covid-19. In the last two (2) weeks, due to positive Covid tests of employees we have been required to temporarily close (2) restaurants, fumigate those restaurants and retest our employees from those restaurants. Staffing our restaurants is one of the most challenging aspects of keeping the restaurants open. Our employees largely live "paycheck to paycheck" and, with no new government support programs in place, need to receive their paychecks to pay rent and feed their families;

16) Wisconsin Apple, prior to filing, entered into a forbearance agreement with Bremer that required payment of past due interest and the furnishing of financial data. The furnishing of the financial data was not a task we could accomplish due to the many other challenges that our staff faced, however, payments were made to Bremer on August 3, 2020 of $197,680.43,

on September 2, 2020 of $29,604.07 and on September 15, 2020 of $28,649.11. The payments were made notwithstanding the fact that the restaurants were losing between $250,000.00 to $300,000.00 per four-week period;

17) On Tuesday night, October 13, 2020, we received a Notice that a Receiver had been appointed for Wisconsin Apple. Rather than let the restaurants go dark and have over 600 employees without a job, this Chapter 11 was filed. The Chapter 11 was also filed so that the Debtor would not incur liability to Applebee's for operation of the restaurants without and approved operator. I have learned that Bremer never contacted Applebee's to obtain the consent of Applebee's to operate the restaurants notwithstanding the fact that Bremer was advised to obtain consent prior to the appointment of a receiver;

18) As the Court can tell due to the paucity of the first day pleadings, Wisconsin Apple, rather than planning a Chapter 11, was not prepared for the filing. The appointment of the Receiver came without warning;

19) Our initial pleadings are designed to ensure that our workers are paid and lines of supply are opened up so that customers can be serviced. Motions that will be filed include a) a motion for a DIP loan with an affiliated entity that will cover the shortfalls in the attached budget, and b) a motion to address PACA, Utility Company issues and existing Bank Accounts. We intend to work closely with Applebee's to insure our compliance with the Franchise Agreements between the Debtor and Applebee's;

20) The Court should note that this is all occurring amid a huge spike in covid-19 cases in October in Wisconsin. Daily news reports list both Green Bay and Milwaukee as nationwide leaders in per capita new cases. Within the last week, we have had an employee test positive

in two (2) stores that required a temporary shut-down of the stores and a complete fumigation;

21) The impact of the new wave of covid-19 cases on casual dining makes budgeting challenging;

22) The budget that has been attached to the Cash Collateral Motion was prepared by Sierra Constellation Partners, an entity retained by Wisconsin Apple as part of its forbearance agreement with Bremer. The budget is, at best, a guess due to the fact that nobody has a crystal ball as to the course of covid-19 in Wisconsin;

23) While the future is a guess, certain facts which prompted the Cash Collateral Motion and the to be filed DIP Loan Motion are known. The facts are the following:
   a. Employees need to be paid if the restaurants are to stay open;
   b. The employees need their paychecks paid so they can purchase food, medicine and pay for housing for their families;
   c. Cash Collateral, to whatever extent Bremer has a lien, must be used to pay employees and provide goods to the restaurants so that they can operate;
   d. The value of the Debtor's assets is greater in operation than if the Debtor were closed down. Bremer has auctioned off parts of its collateral in some of the restaurants we have closed and they have received about $25,000.00 per store; and
   e. The Debtor will face operating shortfalls during the case that must be filled by outside capital.

24) Wisconsin Apple is in the final stages of negotiating and sizing a DIP loan so that the restaurants can stay open and hopefully bridge until cash flow breaks even or sale if that is the chosen course; and

25) The Court's granting of the Wage Motion and the Cash Collateral Motion are critical if the Debtor is going to continue as a going concern and preserve or enhance the value of its assets.

_____
**Seenu Kasturi**